No. 03-728

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 78N

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DANIEL WANDLER,

        Defendant  and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and For the County of Cascade, Cause No. ADC 02–372
                   Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Carl B. Jensen, Jr., Office of Public Defender, Great Falls, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Robert Stutz,
            Assistant Attorney General, Helena, Montana

            Brant Light, Cascade County Attorney; Joel Thompson,
            Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  March 2, 2004

Decided:   March 30, 2004

Filed:

_____
                         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    A jury in the Eighth Judicial District Court, Cascade County, convicted Daniel Wandler of felony possession of dangerous drugs and misdemeanor possession of drug paraphernalia. Wandler appeals from the judgment the District Court entered against him and we affirm.

¶3    Wandler sets forth two issues on appeal:

¶4    1. Does sufficient evidence support Wandler's conviction of possession of dangerous drugs?

¶5    2. Is the omnibus hearing a critical stage of the proceedings requiring the defendant's presence?

¶6    Wandler did not raise Issue 2 in the District Court. Nor has he established a basis for our review of a constitutional issue raised for the first time on appeal. *See State v. Whipple*, 2001 MT 16, ¶ 32, 304 Mont. 118, ¶ 32, 19 P.3d 228, ¶ 32. As a result, we do not address Issue 2.

BACKGROUND

¶7 On June 2, 2002, Great Falls, Montana, police officers were dispatched to the back of a County Market parking lot, where they observed an individual--later identified as Daniel Wandler--sitting in a car. The car's engine was running, but Wandler appeared to be asleep. One officer reached through the passenger door and turned the car off. Another officer attempted to rouse Wandler, but was unable to wake him.

¶8 The officers observed a bag of syringes, a cigarette lighter and a spoon on the passenger seat and on the console between the two front seats of the car. A water bottle with a syringe floating inside was between Wandler's legs. When Wandler remained unresponsive, the officers arranged for an ambulance to take him to the hospital.

¶9 The officers field tested a white powdery substance on the spoon for methamphetamine and cocaine, with negative results. The State Crime Laboratory later identified the substance as Oxycodone, a narcotic painkiller ordinarily taken orally in tablet form. The State of Montana charged Wandler with possession of dangerous drugs and possession of drug paraphernalia.

¶10 At trial, the State presented testimony from the police officers who found Wandler in the parking lot and from a forensic chemist from the State Crime Lab. The forensic chemist testified that the substance in the spoon was Oxycodone, which is a Schedule II dangerous drug pursuant to § 50-32-224, MCA. A Schedule II dangerous drug has a cur-

rently accepted medical use but a high potential for abuse which may lead to severe psychic or physical dependence. Section 50-32-223, MCA.

¶11 Wandler testified he had a prescription for Oxycodone and that he pulverized an Oxycodone pill and injected it in order to relieve a severe headache. He further testified that, in preparation for his trial, he had sent a medical release to the hospital where he had been given the Oxycodone prescription and asked that his records be sent directly to his attorney. The State asked Wandler if he understood that, if he had produced a prescription prior to trial, it would have dismissed the charges against him. At that point, the court ordered a recess and held further proceedings in chambers, outside the presence of the jury.

¶12 Following discussion in chambers, the District Court ordered a half-day recess until the next morning to allow Wandler and his counsel to produce the prescription Wandler had described. When trial resumed the following day, Wandler produced a two-year-old emergency room doctor's note saying he was "given Oxycodone for pain control currently" following an injury. The note said nothing about a prescription for Oxycodone, but stated Wandler "will be treated with Ibuprofen." Wandler also produced a two-year-old prescription for Percocet. The forensic chemist had testified that Percocet is pharmacologically related to Oxycodone but that the white powdery substance in the spoon could not have been Percocet because, unlike Percocet, the white powdery substance did not contain acetaminophen.

¶13 The jury found Wandler guilty. The District Court entered judgment and Wandler appeals.

## DISCUSSION

¶14 Does sufficient evidence support Wandler's conviction of possession of dangerous drugs?

¶15 We review the sufficiency of evidence to sustain a conviction in the light most favorable to the prosecution. The evidence is sufficient if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Duffy*, 2000 MT 186, ¶ 50, 300 Mont. 381, ¶ 50, 6 P.3d 453, ¶ 50 (citation omitted).

¶16 Wandler contends that, because he had an old prescription for Percocet and had been given Oxycodone for pain, a rational trier of fact should have concluded he was not in illegal possession of dangerous drugs. He contends the fact that he ingested the drug intravenously, in a manner not prescribed, is immaterial. Wandler provides no citation to any authority in support of either of these arguments.

¶17 The District Court instructed the jury that to convict Wandler, the State must prove beyond a reasonable doubt that he possessed the dangerous drug Oxycodone and acted purposely or knowingly. In addition to the evidence provided by the prosecution, Wandler's own admissions established that he was in possession of Oxycodone. The officers found no written prescription or prescription bottle in the car, and Wandler did not produce any evidence that he had a prescription for Oxycodone at trial.

¶18    We hold that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of felony possession of dangerous drugs beyond a reasonable doubt.  Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JOHN WARNER